PERRY NATIONAL BANK, Appellant, v. ALBERT ENGNELL,
Appellee.

**NEW TRIAL:** Grounds—Numerous-pointed Motion. The appellant
1  from an order sustaining a numerous-pointed motion for a new trial
must show that none of the grounds are tenable.

**BILLS AND NOTES:** Negotiability—Particular Agreements. The ne-
2  gotiable character of a promissory note is not destroyed by: (1)
an agreement to pay "without discount or offset;" (2) a waiver by
the maker of all exemptions allowed by law; (3) an agreement that
a justice of the peace may have jurisdiction to the extent of $300.

*Appeal from Boone District Court.*—G. D. THOMPSON, Judge.

JUNE 24, 1924.

ACTION at law. There was a trial to a jury, resulting in a
verdict for the plaintiff. From an order setting aside the verdict
and granting a new trial, plaintiff appeals.—*Affirmed.*

*George J. Dugan, Lyle W. Maley,* and *D. G. Baker,* for ap-
pellant.

*J. R. Whitaker* and *F. W. Ganoe,* for appellee.

VERMILION, J.—The plaintiff bank, the appellant, sued to
recover the amount due on a promissory note for $3,500, given
by the defendant to the Perry Stock Remedy Manufacturing
Company, alleging its purchase of the note from the payee, be-
fore maturity and for value. The defendant, in answer, alleged
that the note was without consideration, and was procured by
fraud, in that he never intended to execute a note, and his sig-
nature thereto was procured by fraud of one C. B. Boyer, acting
for the payee, in falsely representing said note to be merely an
agreement for defendant's son to act as agent in selling the
stock remedies manufactured by the payee. It was further al-
leged that the note was not negotiable, and that the plaintiff be-
came the owner of the note with knowledge of defendant's de-

fenses thereto. In reply, plaintiff alleged that it was a bona-fide purchaser of the note for value before maturity, and that the defendant, by his negligence in failing to read the note before signing it, was estopped to set up fraud in the procurement of the note.

There was a verdict for the plaintiff for the amount due on the note. The defendant filed a motion for a new trial, based upon twenty-two grounds. The motion was sustained generally. The trial court indicated in the order sustaining the motion that he was of the opinion that error had been committed in instructing the jury that the note was negotiable. The other grounds of the motion, however, were not overruled. Under such circumstances, it is well settled that there cannot be a reversal if any of the grounds of the motion are good. *Thomas v. Illinois C. R. Co.*, 169 Iowa 337; *Van Wagenen v. Parsons*, 106 Iowa 263; *Holman v. Omaha & C. B. R. & B. Co.*, 110 Iowa 485; *Boyd v. Western Union Tel. Co.*, 117 Iowa 338; *Woodbury Co. v. Dougherty & Bryant Co.*, 161 Iowa 571; *Post v. City of Dubuque*, 158 Iowa 224. To hold otherwise would be to deprive the appellee of the benefit of any other ground of his motion than that considered by the trial court, no matter how meritorious it might be; for, as pointed out in the case last cited, he could not appeal unless the other grounds of his motion were expressly overruled. A large discretion is vested in the trial court in passing on such a motion, and its exercise will not be interfered with where a new trial has been granted unless the discretion appears to have been abused. *Post v. City of Dubuque*, supra; *Woodbury Co. v. Dougherty & Bryant Co.*, supra.

**1. New trial: grounds: numerous-pointed motion.**

We are confronted by the further situation that many of the grounds of the motion for a new trial are not argued by appellant. The argument is almost wholly confined to two propositions: (1) That the note is negotiable; and (2) that the plaintiff was entitled to a directed verdict. The separate grounds of the motion for a new trial, save as relating to the negotiability of the note, are not referred to, except incidentally in discussing these questions. This court cannot, under such circumstances, interfere with the order granting a new trial. *Boyd v. Western Union Tel. Co.*, supra; *Sprager v. Rogers Coal*

& *Min. Co.* (Iowa), 125 N. W. 185 (not officially reported).

However, in view of the fact that the question of the nego-
tiability of the note is presented by the record, is argued at
length by both parties, and will necessarily arise on a retrial,
we deem it proper to indicate our view upon the
question.

2. BILLS AND
NOTES: negoti-
ability: par-
ticular agree-
ments.

The note is as follows:

"$3500.00 Town Boone, State Iowa 7-28-19.
On the first day of January 1920, after date we or either of us
promise to pay to the order of The Perry Stock Remedy Mfg.
Co., Perry, Iowa, three thousand five hundred dollars, payable
at Perry, Iowa, value received, without discount or offset, waiv-
ing our rights to all exemptions allowed us by law, with interest
at the rate of 8 per cent from date if not paid at maturity. And
we also further agree to pay a reasonable attorney's fee if suit
is brought to enforce collection of this note. Consent is hereby
given for any justice of the peace to have jurisdiction herein to
the extent of three hundred dollars.

                                            "Albert Engnell."

It is urged that the agreement to pay without discount or
offset, the waiver of exemption, and the stipulation that any jus-
tice of the peace may have jurisdiction to the extent of three
hundred dollars, each operate to destroy the negotiability of the
note.

Section 3060-a5 of the Code Supplement, 1913, the Nego-
tiable Instruments Act, provides:

"An instrument which contains an order or promise to do
an act in addition to the payment of money is not negotiable.
But the negotiable character of an instrument otherwise nego-
tiable is not affected by a provision which:

"1. Authorizes the sale of collateral securities in case the
instrument be not paid at maturity; or

"2. Authorizes a confession of judgment if the instrument
be not paid at maturity; or

"3. Waives the benefit of any law intended for the ad-
vantage or protection of the obligor; or

"4. Gives the holder an election to require something to
be done in lieu of payment of money.

"But nothing in this section shall validate any provision or stipulation otherwise illegal."

Section 3060-a1 provides that an instrument, to be negotiable, must contain an unconditional promise to pay a sum certain, and must be payable on demand or at a fixed or determinable future time.

The promise to pay the amount of the note without discount or offset does not render uncertain the amount to be paid. The plain import of the language is, on the contrary, to emphasize the certainty of the amount to be paid. The agreement to pay without discount adds nothing to the legal effect of the naked promise to pay the amount called for by the note. The promise to pay without offset is the equivalent of a promise to pay without defalcation. Defalcation is defined by Bouvier as the reduction of the claim of one of the contracting parties against the other by deducting from it a smaller claim due from the former to the latter. See, also, *McDonald v. Lee's Admr.*, 12 La. (Old Series) 435. A promise to pay without defalcation or offset is expressive of an attribute of negotiability, in that its ostensible purpose is to cut off defenses between the original parties, as against a holder in due course. *Council Bluffs Iron Works v. Cuppey*, 41 Iowa 104. Such a provision is, at most, no more than a waiver of a right given the obligor by law to offset any amount due him from the payee against the amount due on the note. It is expressly provided in the third paragraph of the quoted statute that a provision waiving the benefit of a law intended for the advantage of the obligor does not have the effect to destroy negotiability. Brannan on the Negotiable Instruments Law 25.

The same thing is true of the provision waiving all exemptions allowed by law. It would be, if valid, a mere waiver of a benefit given by law for the advantage or protection of the debtor. *Perry Sav. Bank v. Fitzgerald*, 167 Iowa 446. It has frequently been held that such a provision does not operate to destroy the negotiable character of the note. *Navajo County Bank v. Dolson*, 163 Cal. 485 (126 Pac. 153, 41 L. R. A. [N. S.] 787) ; *Hughitt v. Johnson*, 28 Fed. 865; *First Nat. Bank v. Alexander*, 161 Ala. 580 (50 So. 45) ; *Dumas v. People's Bank*, 146 Ala. 226 (40 So. 964) ; *Montgomery First Nat. Bank v. Slaugh-*

*ter*, 98 Ala. 602 (14 So. 545, 39 Am. St. 88) ; *Lyon v. Martin*, 31 Kan. 411 (2 Pac. 790) ; *Zimmerman v. Anderson*, 67 Pa. 421 (5 Am. Rep. 447) ; *Johnston's Estate*, 20 Pa. Dist. Rep. 831. See, also, Daniel on Negotiable Instruments (6th Ed.), Section 61, and Joyce on Defenses to Commercial Paper (2d Ed.) 15.

In this connection, appellee relies upon the case of *Curtis v. O'Brien*, 20 Iowa 376, holding that a person contracting a debt cannot, by a simple contemporaneous waiver of exemption laws, entitle the creditor to levy on exempt property. The fact that the provision may be invalid and of no effect does not give it any force to destroy the negotiable character of the note in which it is found. In *Tolman v. Janson*, 106 Iowa 455, it was held, before the enactment of the Negotiable Instruments Law, that a provision in a note authorizing an attorney to appear and confess judgment, being void in this state, did not render the note nonnegotiable. *Newhall Sav. Bank v. Buck*, 197 Iowa 732. See, also, *Chandler v. Kennedy*, 8 S. D. 56 (65 N. W. 439), and Daniel on Negotiable Instruments, Section 62-a.

The provision giving a justice of the peace jurisdiction to the amount of three hundred dollars is one having, doubtless, particular reference to our statute, Code Section 4477, providing that, by consent of the parties in writing, the jurisdiction of a justice of the peace, which is otherwise limited to cases where the amount in controversy does not exceed one hundred dollars, may be extended to actions where the amount claimed is not more than three hundred dollars. This provision in the note may also be said to be in the nature of a waiver of the benefit of a law intended for the advantage or protection of the obligor, and to come within the purview of the third clause of the statute. Moreover, it affects neither the amount to be paid nor the time of payment, but applies only to the remedy after maturity. It is essentially of the same nature as a provision for confession of judgment after maturity, which the statute expressly provides shall not affect the negotiability of the instrument. The Negotiable Instruments Act is a uniform statute enacted in many of the states. The provision declaring that a stipulation authorizing a confession of judgment, if the note is not paid at maturity, does not affect its negotiability, is inoperative in this state, because a judgment may not be obtained here in that manner. But

that fact does not preclude us from considering the provision as indicative of the general purpose and intent of the act that provisions affecting merely the remedy shall not operate to destroy the negotiable character of instruments otherwise negotiable. That such is the purpose of the act is also shown by the provision that a stipulation authorizing the sale of collateral securities, if payment of the instrument is not made at maturity, shall not affect its negotiability. The note in suit was not deprived of its negotiable character by these provisions.

It is contended for appellant that it was, in any event, entitled to a directed verdict for the amount due on the note, and that, therefore, it was error to set aside the verdict in its favor and grant a new trial, without regard to the other grounds of the motion. If it be conceded that a situation might arise where this would be true, we do not think it is presented here. *Frink v. Commercial Bank*, 195 Iowa 1011. The question of defendant's alleged negligence in signing the note without reading it was for the jury. *Christensen v. Harris*, 190 Iowa 256; *Bank of Holmes v. Thompson*, 192 Iowa 1032. It was also a question for the jury to determine, under the facts shown, whether the plaintiff was a holder in due course of the note.

The order granting a new trial must be and is—*Affirmed.*

ARTHUR, C. J., STEVENS and DE GRAFF, JJ., concur.